IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN P.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 23 C 3456 |
| v. | ) |
| | ) Magistrate Judge |
| MARTIN J. O'MALLEY, | ) Maria Valdez |
| Commissioner of Social Security,[2] | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff John P.'s claim for Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion to reverse or remand the Commissioner's decision [Doc. No. 12] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 18] is granted.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by his first name and the first initial of his last name.

[2] Martin J. O'Malley has been substituted for his predecessor pursuant to Federal Rule of Civil Procedure 25(d).

## BACKGROUND

### I. PROCEDURAL HISTORY

On June 14, 2019, Plaintiff filed a claim for SSI, alleging disability since February 28, 2019. The claim was denied initially and upon reconsideration, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"). A telephonic hearing was held on February 2, 2022, and all participants attended the hearing by telephone. Plaintiff appeared and testified at the hearing and was represented by counsel. A vocational expert ("VE") also testified.

On February 28, 2022, the ALJ denied Plaintiff's claim for benefits, finding him not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

### II. ALJ DECISION

Plaintiff's claim was analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the application date of June 14, 2019. At step two, the ALJ concluded that Plaintiff had severe impairments of bipolar disorder and attention deficit hyperactivity disorder (ADHD). The ALJ concluded at step three

that Plaintiff's impairments, alone or in combination, do not meet or medically equal any listed impairments.

Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations: can understand, remember, and carry out more than simple tasks, but less than complex duties; and can have superficial interaction with the general public. At step four, the ALJ found that Plaintiff has no past relevant work. At step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff can perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Social Security Act.

## DISCUSSION

**I.      ALJ LEGAL STANDARD**

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former

occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one to four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is . . . 'more than a mere scintilla.' . . . It means – and

means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (citations omitted). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

However, even under this relatively lenient standard, an ALJ is not absolved of her duty to support the decision with record evidence. *See Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016) ("We will uphold an ALJ's decision if it is supported by substantial evidence, but that standard is not satisfied unless the ALJ has adequately supported his conclusions."). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately

5

articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

## III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error for several reasons, including: (1) the ALJ erred in determining there was no listing level severity at step three; and (2) the ALJ failed to support her finding that Plaintiff would be capable of sustaining the on-task and interactive requirements of full-time work. Each argument will be addressed below in turn.

### A. The ALJ's Step Three Determination

For his first argument, Plaintiff contends that the ALJ erred in finding at step three that Plaintiff's mental impairments do not meet or equal listing level severity. In her step three analysis, the ALJ assessed the "paragraph B" criteria, namely, Plaintiff's impairments in the four broad areas of mental functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. The ALJ ultimately concluded that "[b]ecause the claimant's mental impairments

6

do not cause at least two 'marked' limitations or one 'extreme' limitation, the 'paragraph B' criteria are not satisfied." (R. 21.)

In reaching that determination, the ALJ reasoned as follows with respect to understanding, remembering, or applying information:

> In understanding, remembering or applying information, the claimant has a mild limitation. While the record reflects that the claimant received special education in high school, since the alleged onset date the record evidences no significant problem with the claimant's ability to learn, recall, or use information to perform work activities. On psychological consultative examination he erred while performing serial 3s and 7s subtraction tasks, and on 1 of 4 math problems; however, on tasks involving memory, he recalled up to 5 digits forward and 3 digits backward. Psychological consultative examiner Olga Green, PsyD noted that the claimant demonstrated good recall of childhood events and events of more recent occurrence. He also demonstrated ability to interpret common proverbs. Overall, he demonstrated no significant deficits with cognition on psychological consultative examination. Mental status examination findings provided by his psychiatrist, fail to reflect otherwise. Accordingly, the undersigned finds that the claimant has no more than slight limitation in this area of mental functioning.

(R. 20-21 (citations omitted).) Given the numerous rationales provided by the ALJ, the Court finds that the ALJ's determination as to this functional area was based on substantial evidence and the ALJ built the requisite logical bridge from the evidence to her conclusion. *See Meghan S. v. Kijakazi*, No. 20 C 1592, 2021 U.S. Dist. LEXIS 172594, at *8-9 (N.D. Ill. Sep. 13, 2021) ("The ALJ's weighing of the evidence regarding the first paragraph B criterion was fully explained and is supported by substantial evidence.").

With respect to the functional area of interacting with others, the ALJ reasoned as follows:

> In interacting with others, the claimant has a moderate limitation. The claimant indicated avoidance of others due to lack of emotional energy

7

> to get along with them. However, upon psychological consultative examination he reported no trouble socializing, and demonstrated appropriate and spontaneous speech, euthymic mood, and no lability. Later mental status examination findings provided by his psychiatrist, Purnima Gorrepati, MD, reflect no problem with mood. The record reflects failure of the claimant to take medication daily as prescribed by Dr. Gorrepati, but otherwise reflects no problem cooperating with providers. The record also reflects that the claimant engages in social activities such chatting online while video streaming, spending time with his mother, and his girlfriend.[3] Accordingly, the undersigned finds no more than moderate limitations in this area of mental functioning, and demonstration of useful ability to relate to others.

(R. 21 (citations omitted).) Given these explicit rationales based on evidence in the record, the Court finds that the ALJ's determination as to this functional area was based on substantial evidence and the ALJ provided the requisite logical bridge from the evidence to her conclusion. *See Elizabeth A. v. Saul*, No. 19 C 6024, 2021 U.S. Dist. LEXIS 8348, at *11 (N.D. Ill. Jan. 15, 2021).

With respect to concentrating, persisting, or maintaining pace, the ALJ reasoned as follows:

> With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. The claimant erred on tasks requiring sustained mental effort, such as the series 3s and 7s calculation tasks on psychological consultative examination. However, Dr. Gorrepati noted the claimant's own report of having no problem completing tasks, with attention, or distractibility, while on Adderall. In addition, Dr. Gorrepati notes no problem with attention or distractibility on mental status examination. Further, the claimant maintains sufficient mental functioning in this area to watch television, and maintain self-employment livestreaming video games if even on a part-

---

[3] Plaintiff maintains that the ALJ erred in assessing his daily activities in relation to the paragraph B criteria. (Pl.'s Memo. at 9.) However, the Court finds that the ALJ did not improperly equate Plaintiff's daily activities with an ability to work full time. Rather, the ALJ appropriately read into Plaintiff's activities that his alleged mental impairments were not as severe as alleged. *See Darryl S. v. Kijakazi*, No. 22 C 3827, 2023 WL 3169617, at *4 (N.D. Ill. Apr. 28, 2023).

> time basis. As such, the undersigned finds no more than moderate limitations in this area of mental functioning and demonstration of useful ability to focus attention, and stay on task at a sustained rate.

(R. 21 (citations omitted).) Given these explicit rationales based on evidence in the record, the Court finds that the ALJ's determination as to this functional area was based on substantial evidence and the ALJ provided the requisite logical bridge from the evidence to her conclusion. *See Meghan S.*, 2021 U.S. Dist. LEXIS 172594 at *17 ("Although [the claimant] disagrees with the ALJ's interpretation of the CPP evidence, the ALJ's interpretation was not unreasonable and she did not fail to consider any relevant line of evidence. Where reasonable minds could differ, the Court must defer to the ALJ's conclusion. The ALJ's finding that [the claimant] is no more than moderately limited in concentrating, persisting, or maintaining pace is thus supported by substantial evidence.") (citation omitted).

Finally, with respect to adapting or managing oneself, the ALJ reasoned as follows:

> As for adapting or managing oneself, the claimant has experienced a mild limitation. The record reflects no problems with the claimant's personal hygiene, and he appears to possess the ability to make plans for himself independent of others. The claimant generally exhibits no difficulty managing his emotions during medically related encounters. Based upon the evidence of record, the undersigned finds no more than slight limitation in this area of mental functioning.

(R. 21.) Given these explicit rationales based on evidence in the record, the Court again finds that the ALJ's determination as to this functional area was based on substantial evidence and the ALJ provided the requisite logical bridge from the evidence to her conclusion. *See Meghan S.*, 2021 U.S. Dist. LEXIS 172594 at *17-18.

9

Ultimately, the Court finds that the ALJ's step three conclusion was predicated on substantial evidence pertinent to the four criteria and was supported by the requisite analytical bridges. Accordingly, there are no issues with the ALJ's step three determination that would require remand. In attacking the ALJ's step three assessment, Plaintiff maintains that the ALJ's "finding cannot be reconciled with the record." (Pl.'s Memo. at 8.) Unfortunately for Plaintiff, that contention and his related arguments amount to a request for the Court to reweigh the evidence. (*See id.* at 10 ("[T]here is substantial evidence that, in the aggregate, Plaintiff's impairments result in deficits that would lead to marked, if not extreme limitations in the ability to sustain work-related functions.").) Reweighing the evidence in relation to the paragraph B criteria is an endeavor this Court cannot undertake. *See Thomas T. v. Saul*, No. 218CV00304, 2019 WL 5418120, at *4 (N.D. Ind. Oct. 22, 2019) ("Plaintiff is asking the Court to reweigh medical evidence to come to a different conclusion regarding the paragraph B criteria. The Court cannot do so. The ALJ properly supported the decision with substantial evidence."). Accordingly, Plaintiff's first argument must fail.

### B. Medical Opinion Evidence and Plaintiff's Noncompliance

Though couched in terms of on-task and interactive requirements, Plaintiff's second arguments primarily boil down to a general assertion that the ALJ did not properly evaluate the medical opinion evidence. Because Plaintiff filed his claim in 2019, the ALJ was required to evaluate the medical opinion evidence under regulations applicable to claims filed on or after March 27, 2017. 20 C.F.R. §

10

404.1520c (2017). Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). An ALJ is instead required to articulate "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). Factors to be considered in this evaluation include supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a), (c). Supportability and consistency are the two most important factors. 20 C.F.R. § 404.1520c(a); *see* 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."). An ALJ's decision must explain how she considered the factors of supportability and consistency, but she is not required to explain how she evaluated the other factors. 20 C.F.R. § 404.1520c(b)(2).

Plaintiff first takes issue with the ALJ's assessment of the opinions of Dr. Purnima Gorrepati, his treating psychiatrist. In her decision, the ALJ noted Dr. Gorrepati's opinions, including her opinions that Plaintiff could not work a regular job, would be off-task more than 30 percent of the workday, and would have

11

absences of more than six days a month. The ALJ then evaluated Dr. Gorrepati's opinions as follows:

> The[] undersigned finds Dr. Gorrepati's opinion unpersuasive for many reasons. First, Dr. Gorrepati's endorsement of marked limitations with respect to social functioning and maintaining attention and concentration are unsupported by and inconsistent with mental status examination findings. During the relevant period, Dr. Gorrepati routinely notes problems with the claimant's sleep, but mental status examination findings have been within normal limits, with no evidence of problems with attentiveness, distractibility, or communicating. In [a] letter dated January 4, 2020, Dr. Gorrepati noted a history of multiple inpatient admissions, partial hospitalizations, and intensive outpatient treatment dating back to the claimant's adolescent years. Dr. Gorrepati noted that the claimant often does not pay close attention to details or makes careless mistakes, has trouble keeping attention on tasks, does not seem to listen when spoken to directly, and avoids things that take a lot of mental effort, and without . . . medicine he can be impulsive, blurt out things or rush through tasks. However, such does not appear in Dr. Gorrepati's contemporaneous notes and the record reflects no psychiatric hospitalizations or recommendations for such since the alleged onset date. As indicated above, Dr. Gorrepati routinely notes mental status examinations within normal limits.

(R. 25 (citations omitted).)

So, in sum, the ALJ discounted Dr. Gorrepati's opinions because they were unsupported by mental status examination findings, inconsistent with mental status examination findings, and unsupported by contemporaneous treatment notes. Given the ALJ's explicit rationales, the Court finds that the ALJ properly assessed and explicated supportability and consistency in discounting Dr. Gorrepati's opinions. *See* 20 C.F.R. § 404.1520c(b)(2). The Court must decline Plaintiff's invitation to reweigh the evidence in relation to Dr. Gorrepati's opinions. *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Though Plaintiff also takes issue with the ALJ's assessment of the opinions of Shari Jacobson, his treating

12

therapist, the ALJ appropriately discounted those opinions, explaining that she found the opinions unpersuasive because they were unsupported by and inconsistent with mental status examinations reflecting normal findings. (R. 26.) As with Dr. Gorrepati, and despite Plaintiff's requests, the Court cannot reweigh the evidence in relation to Ms. Jacobson's opinions. *See Gedatus*, 994 F.3d at 900.

Plaintiff briefly argues that the ALJ's asserted errors with respect to her assessment of the medical opinions also apply to the ALJ's assessment of Plaintiff's alleged symptoms. In keeping with its finding of no error in the ALJ's evaluation of the opinion evidence, the Court also finds no error in the ALJ's symptom analysis. In advancing his argument, Plaintiff contends in particular that the ALJ erred in addressing Plaintiff's refusal to take his medication as prescribed. On that topic, the ALJ noted that Plaintiff "sleeps on Monday, Wednesday, and Friday" and "[r]ather than taking his medication on a daily basis as prescribed, he takes it every other day" because otherwise he would allegedly "remain asleep during the day." (R. 23.) The ALJ further noted that Plaintiff's self-chosen method of medication administration was contrary to Dr. Gorrepati's prescribed regimen. (*Id.*) The ALJ also noted that Dr. Gorrepati explained to Plaintiff the risks of "alternating his sleep cycle due to medications." (*Id.* at 24.) The Court finds that the ALJ appropriately analyzed and considered Plaintiff's medication noncompliance, including Plaintiff's asserted reasons for not taking his medication as prescribed. *See James C. v. Kijakazi*, No. 20 CV 6592, 2023 WL 3886106, at *5 (N.D. Ill. June 8, 2023) ("An ALJ may consider noncompliance with recommended treatment

13

modalities when evaluating the severity of a claimant's symptoms.") (citation omitted); *Lashonda S. v. Kijakazi*, No. 22-CV-5071, 2023 WL 5334612, at *6 (N.D. Ill. Aug. 18, 2023) ("Upon review of the ALJ's decision, the Court does not find any suggestion the ALJ placed improper emphasis on Plaintiff's medication noncompliance as part of the subjective symptom evaluation."); *Dallas E. H. v. Kijakazi*, No. 20 C 2717, 2021 WL 4635802, at *6 (N.D. Ill. Oct. 7, 2021) ("In evaluating Dallas's subjective symptoms, the ALJ also properly considered Dallas's noncompliance with treatment recommendations, such as attending only four therapy sessions and not taking prescribed medication."); *McBride v. Berryhill*, No. 16 CV 9487, 2018 WL 3344406, at *6 (N.D. Ill. July 9, 2018) ("[T]he ALJ properly noted that Claimant had a history of non-compliance with medications and medical treatments."). Accordingly, Plaintiff's final argument is unavailing.

## CONCLUSION

For the foregoing reasons, the points of error raised by Plaintiff are not well taken. Accordingly, Plaintiff's motion to reverse or remand the Commissioner's decision [Doc. No. 12] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 18] is granted.

**SO ORDERED.**  **ENTERED:**

**DATE:    February 14, 2024**    _____
**HON. MARIA VALDEZ**
**United States Magistrate Judge**

14